Thank you, Your Honor. My name is Kirk Wolden and I represent the Eisenbrandts who were interveners in the District Court and our appellants here today. I first want to address the issue of the unique procedural manner in which we believe the matter is presented to this Court. We want to talk about our position that this was, in fact, a sua sponte motion because it was based upon an argument, based upon evidence that was not submitted by any party in support of or in opposition. Now, your client never moved for a 56-F. We did not, Your Honor. And the reason being is that this, because it was a sua sponte motion, it's not a typical 56-F situation in our submission where you are presented with a legal argument, where you are presented with evidence which supports a lack of dispute as to that fact, and there is a body of evidence which may or may not be available on that issue in time to oppose that motion. What we are saying is that this was, in essence and in actuality, a new and different motion, and it was a new and different motion that had not been the subject of discovery and, in fact, had been the subject of the case. Scalia What was the motion, the motion for summary judgment? Wolden It was a motion for summary judgment brought by the plaintiff, both against the United Nations and the District Court. Breyer They didn't raise agency in their motion for summary judgment. Wolden Absolutely not. And for that reason, not only that, if you look, it was also a situation where there was a judicial admission at the outset of the action, admitted to in the answer by the defendant, the insured, that the — that, in fact, Mangeli was the agent of the insurance company. It was an entirely new issue. We were caught by surprise. There had been no specific discovery, and we had nine days in which to attempt to go outside the existing record. Discovery had been closed for 10 months, and we certainly did indicate to the Court the ability to and, if afforded the opportunity, the willingness to go out and get additional evidence. So I don't think it's a situation where we could have been expected to comply with 56F or where it really was intended to apply. Kagan If we were to adopt your argument, all this would get you is a reversal and go back and redo the summary judgment motion. Why don't you go on to the merits of what the District Court judgment is? Wolden Certainly. Absolutely. First and foremost, we have what we believe to be a binding judicial admission regarding the agency and regarding the agent acting on behalf of the insurance company. So even if that were not the case, we have Mangeli in his declaration saying, I went out and I got this driver's record. I went out and I — which is something that I always do when I do a policy for Intigon, and I did it in this case. There's certainly evidence of an agency and them do — and Mangeli doing work pursuant to an established course of business with Intigon.  Kagan See, the problem is the District Court judge said as a matter of law, Mangeli couldn't be — he was a broker, and he couldn't therefore be an agent for the — for the insurance company. Wolden Well, but as we pointed out in our — both our moving papers — Kagan Was that right? Was he right? Wolden No, it's not, because, one, the established California law is that someone can act in a dual capacity, both as the broker for the — the insurant and as the agent in one of various capacities on behalf of the insurant. And what we're really arguing is that there is evidence that the agent was acting as the agent for Intigon in terms of conducting the — whatever investigation was going to be done. And with that, I think I'd explain that more if I can speak to it a little bit in the context of Barrera and Pagos. Because Barrera says that you need to go beyond the four corners of the agreement. You need to do an investigation at or within a reasonable time of submission of the application confirming the insurability of the insurant. Now, what we have is an unequivocal admission in the record that Intigon did nothing. And if you look specifically, it's — it was disputed fact number 30. It's in the record at page 136. Intigon employee Sharon Dowell, who was presented as the person most knowledgeable regarding underwriting at Intigon, testified, question, does Intigon have a policy and procedure by which it independently investigates the insurant for insurability beyond merely accepting the policy application and submitted documents as being truthful and accurate? Answer, no. So first and foremost, Intigon admits to a procedure that does not comply even with Barrera. So if, in fact, there was no agent to perform the investigation on their behalf, appellants submit that we were entitled to judgment as a matter of law based upon the fact that the policy and procedure to which Intigon admits does not even comply with Barrera. Now — But they dispute, or Mangeli disputes in his declaration whether or not — what's her name? Stojka. Stojka even went in there — when she went in there the second time, whether she was even adding the son. I understand. So there's just a factual dispute here. And we were prepared to meet those factual disputes as to the submission of the application initially and also as to the allegation that there was a subsequent modification and what that request for modification may have meant in terms of the knowledge and the need to investigate. What is in the record with respect to adding Ian? Is there a piece of paper? Yes, absolutely. There's a declaration from the defendant, Susanna Stojka, in which she describes going in — Now, that's the defendant. Yes. All right. Now, what is there in the record with respect to what the insurance company was tendered or received? From Mangeli. There is — Probably from Mangeli, right? There's nothing in the record that in fact — there's nothing to document that meeting between Stojka and Mangeli.  One is whether or not — So all we have is a showing that she asked to have Ian added, but there is no showing that anything ever happened as a result of that. That is correct. And — but again, the duty to investigate flows not only from that particular event, but flows also from the submission of the application initially. Right. And so while we think that that adds fuel to the fire, by no means are we relying solely upon that subsequent meeting to establish a reasonable basis for investigation. So — and that's because if you look at Pagos, as it applied Barrera, it said not only do you have a duty to go outside — or to go outside the four corners of the document to investigate the truth or the accuracy of what may be in that document, but you may have to go outside the information that is contained within that four corners. Exactly what are you asking us to do? Well, I believe that if the Court were to accept that Mangeli was not the agent of Intigon that we're entitled to judgment as a matter of law based upon the fact that they — You're asking us to grant summary judgment in your favor. To respond to. Well, I think we're entitled to it. I think we're entitled to remand. Well, I was going to say, what's your second request? Of course. Plan B. Well, and then our primary — our primary — our primary request is that we be afforded the opportunity to a trial on the merits. There are triable issues of fact. We believe still that the Court is wrong legally in its — in the manner in which it applied Barrera and Pagos. And I would encourage the Court, if it agrees with our — with our interpretation of Barrera and Pagos, certainly give instruction in that regard. Because the problem is, is if you allow insurance companies to do what they did here to, after the fact, go find one specific representation and say, this one, I know they could not have verified if — we could not have verified if we looked. Let's base our decision on that. That sort of cherry-picking is so contrary and so undermines the public policy in favor of the financial responsibility law. Clearly, we would argue that failing to comply with our own underwriting guidelines regarding insurability, and then also having the capacity to do things such as simply look at the truck, which was clearly not suitable to be on the road, to call up the California Highway Patrol and find out that this motor carrier and this lady were suspended from driving on the California roadways. Those types of things which could have been done in a minute at no cost, those are the types of things to which insurability within the meaning of Pagos and Barrera refers. Counsel, why don't you reserve the rest of your time, and we'll hear from the other side, and then you can rebut. We'll hear from the insurance company. May it please the Court. I'm Robert Latham, appearing for the appellee. Mr. Latham, we – there are so many factual issues in this case. We have to at least remand it for that – for determination of the facts by the trial court, do we not? During the opening portion of the oral argument. A little louder, please. During the opening portion that is spoken by the appellant's counsel, there was discussion about factual issues. However, those are superseded by the legal ones upon which the district court made its decision. Specifically, the last part of the argument just now is somehow when someone is not covered under a policy, somehow an omission in not finding out about that person creates coverage, simply not the case under California law. Well, you're assuming someone is not covered there, aren't you? I mean, I'm not following that. That's the issue. Who's the broker? Who's the agent? Or is somebody both? You assume the answer in your statement. Well, let me backtrack a moment then. Thank you, Your Honor, and address that issue on the agency. In saying that the district court could not go back and look at the record as a whole is something that runs counter to Article III judges' authority. Well, they have a lot of – there's no question that Article III judges have a lot of power, but there's something called notice. Well, the notice here is, in fact, the objections that were filed with respect to the magistrate's recommendations, not once, not twice, not three times, but six times referenced the issue of the broker. So, therefore, parties were on notice as well as oral argument on the motion itself. Counsel for appellant was heard on that particular issue, objected to the fact, saying that it was sua sponte, objected to the fact that the district court looked at the application in which the box for broker was checked, but also considered by the district court and argued strenuously at oral argument on the motion before it was entered as a summary judgment, was the fact that appellants themselves asked for judicial notice to be taken of California Insurance Department records, showing, in fact, that Mr. Mangelli was a broker representing myriad insurance companies. Now, under the Pearson case cited in the appellee's brief, the California Court of Appeal has actually made it very clear the distinction between brokers and agents. When one represents myriad, in fact, more than one insurance company, he is a broker, and that's under the broker statute, under the insurance code. One can be an agent, perhaps, in being responsible for conveying premium payments, but in terms of placing the coverage, trying to obtain the coverage for the insured, for the client, for the customer, that producer, to use the insurance company parlance, is a broker, because it is his or her responsibility to try to find that broker or other insurance companies. And that's exactly what was done here. Counsel, what is this additional authorities document all about? I apologize to the Court in stepping in to argue this oral argument. I located other authorities that are. You give us this document with 18 supplemental authorities. Only one of them is in 2010. When did you give this to opposing counsel? Just now. And what are we supposed to do with this? There's no parentheticals. I have no idea what this is. It's like a second brief. This is, frankly, gobbledygook to me. I'm sorry, Your Honor. What are we supposed to do with it? I apologize, Your Honor. What are we supposed to do with it? I was going to give citations on the record, and then I was instructed to list the citations on this piece of paper. We don't know what any of this stuff means. It was a brief that was filed. Correct. Did you write the brief? I did not. So you don't like the brief? I don't say that I dislike it. I believe that some of the points. Inadequate. This is like a second brief. There were some points that I believe could be emphasized that were not covered in the brief. When did you come up with this? I'm sorry? When did you come up with this? I researched the issues and came up with them yesterday. Did you notify counsel that you were going to come up with this? No, I did not. Do you think it's entitled to notice? I believe so. I believe so. And unfortunately, the time didn't permit. But the issues I want to address in these 18, and some of them are string citations, is the district court did have absolute authority to review the entire record. Were there objections to the recommendation? What do you do with the – you know, in the complaint that was pled here, they allege that he was their agent. Well, it was an article of pleading, number one. Number two. You think it was a judicial admission? No. No? Why not? Because it was superseded by the summary judgment motion pleadings themselves. They never filed an amended complaint. No. But the exhibits to the motion for summary judgment, exhibits take priority over inconsistent pleadings in this circuit. And I gather that's one of the authorities you cited in that list of cases? Correct. What case is that? Ott, that's O-double-T, versus Home Savings and Loan Association, 265 Federal 2nd, 643, page 6. 1958 case. You know, 28J in supplemental is supposed to be new things, not 1958 cases. And then there is one from the circuit that's even older than that. But when exhibits are at issue, as they were in the motion for summary judgment, they take precedence over an inconsistent pleading that is inarticulately perhaps alleged. But in terms of the word agent, agent is also a loaded term that the other side, that is, the intervenors were trying to exploit, making an agent for all purposes. What's inartful about paragraph 5? On honor about May 19th, 2006, Defendant Susanna Isjaka, DBA Gold Star Hauling submitted an application for insurance to plaintiff Intangon Preferred Insurance Company through its agent. Is there anything inartful about that? Well, I think that in terms of what the agent, the word agent means, yes, it was overbroad. So that's ambiguous, what agent means in that paragraph. Yes. Okay. So you're suggesting there's really no question of fact with respect to the status agent or broker here. It's a legal issue. I believe that it's an absolutely legal issue. What about the question of whether Ian was added, whether coverage was extended to Ian as a driver? Whether or not it is true that Mrs. Isjaka communicated her desire to add her son to the policy, whether or not that's true, there is no evidence that that request, if it were made, was communicated to Intangon Preferred. Well, don't we have her recital saying that she met with Mangeli and specifically added, requested to be added? Your Honor, that's correct. Doesn't that raise a question of fact? No. Why? Because it is superseded by the law, and that is there is no record that he ever conveyed that as a broker. He ever conveyed that information to Intangon. And it's like telling one's neighbor, for example. It's like telling someone else, but not somebody with the authority representing the company, to actually add that individual. So irrespective of the factual disagreement between Mangeli saying no, she never asked for her son to be added to the policy, and Mrs. Isjaka herself, obviously in whose best interest it is, to have had her son added after not listing him as even one of her drivers on the application, then that's immaterial. Under the framework of insurance agency law, and that is, as a broker, he had to communicate that information on the policyholder's behalf to Isjaka, and that is the Pearson decision. The Barrera issues, Your Honor, represent the other half of this case. On the one hand, appellants are trying to rein in what the Federal District Court could do in terms of looking at the record de novo. On the other hand, they're trying to expand the role of an insurance company and what it needs to do in terms of reasonable investigation of a risk prior to issuance of the policy. Barrera case is very unclear, despite providing what the law is, in what is reasonable. The Court remanded the case to make that determination. Pagos, the same way. There were things that were pointed out in those two decisions, but they were neither one of them stood for the proposition that one must do the following. They certainly did not stand for the proposition that an insurance company has the obligation to look for things that aren't possibly discernible from the application. There are cases in California, and I have cited those, regrettably, on the erratum that I just presented the Court with this morning, but there are California cases that say, for example, in the case of a life insurance policy, when the applicant has said, well, I was examined upon my induction into the U.S. Armed Services in World War II. That was the last time I went to a doctor. The insurance company was held as a matter of law not to have had to disregard what was on his application as far as full health and to then go back to the U.S. Army and say, is this true? Did this applicant ever appear or present with heart problems? What kind of rating, what did he have? This kind of thing. The Court said, no, you don't have to do that. You can take the application at face value. You don't have to distrust it. There are other cases saying the same thing in, admittedly, the life insurance context and the health insurance context, slightly different in many, well, different in some respects, statutorily, as well as under the common law, from auto insurance. But the message is clear. An insurance company does not need to look for additional conditions that are not reasonably obvious from the application. Insurance code section 332, which has actually been kind of the 600-pound gorilla in this entire case, is what happens to an insurance company if it doesn't do the reasonable investigation. That is, its coverage defenses are waived. Now, under that section, it's been held, does not require an insurer to take all possible measures to reveal undisclosed conditions. That was in the Neato decision, cited in my erratum, decided in 2010. Other cases in California, within the last four to five years, in insurance matters, have said neglecting to make inquiries as to such facts where they are distinctly implied in the application can cause a waiver of an insurance code. Here, appellants do not even make the argument that from the four corners of this application, Ian Ustoika was reasonably obvious or had some reference at all as one of his mother's drivers. They fail to point out what the insurance company could or should have done to find out about him. This is different than looking at an auto insurance application that has someone's driver's license number, in which the DMV can be consulted to find out about that person's driving record. In fact, that, in the record, is what Anagon Preferred did on the one designated driver Mrs. Ustoika put in her application. The original application. The original application, correct. The Pegos case talks about an automobile. I suppose you're saying that if, in fact, the insurance company actually received the second application, they would have done the same thing for Ian. That is correct. In fact, when it found out about Ian, after the loss, it did precisely that. It did what? It did precisely that and found his myriad legal convictions. The fact that he was an underage driver under the terms of the policy and had numerous moving violations that were not within the underwriting guidelines. They weren't accepting the defense at that point? Actually, the insured was defended under reservation of rights in the underlying case, pending the determination of the rescission by the district court, in which the court did grant the summary judgment of rescission as to both the interveners and the insured, and the insured did not appeal. After that, then, premium was refunded. Thank you, counsel. Your time has just expired. Thank you very much, Your Honor. Mr. Walden, you have some reserved time. Thank you, Your Honor. First of all, regarding the question of agency and the fact that the court had access to the full record, of course, what we argue is that if the court had full access to the record, it had equal opportunity and equal obligation to rely upon judicial admissions contained in the complaint, which were in no sense fleeting, in no sense, that's as they were described in the appellee's brief. And I think it's important to note that in addition to quoting some of these representations or these admissions in the brief, at page 282 of the record is the following language, that the application was, quote, presented to Intigon through its agent, Mangelli Insurance Agency, close quote. On page 283 of the record is the following judicial admission, quote, that the application was then presented to Intigon's agent, the Mangelli Insurance Agency. Now, these are documents in front of the district court? Absolutely. Have you ever heard of this case, Ott v. Home Savings from 1958? I must say, Your Honor, I have not. It's a pleading supersede complaint, according to the other side. You ever heard of that case? I have not, and I'm more than prepared to, if the court would like to, to brief the Ott case. But I think there's one second issue that I think may circumvent the need to go there, and that, of course, is that the only evidence that was submitted in support of this alleged lack of agency was a document that was not submitted for that purpose, but for another purpose, the application. That's the box check. Yeah, and that's the sole evidence upon which the court relied. And as we argued both to the trial court and raised on appeal here, we did not believe that that checkmark rises to the level of admissible evidence, mainly because there is no foundation that Mangelli checked that box, that he reviewed it for accuracy or subscribed to its accuracy in signing the application and submitting it. So in the first instance, the only evidence upon which the court relied was inadmissible evidence. So in our submission, there is nothing to supersede those judicial admissions. That's point number one. But again, if Your Honor would – Your Honors would like us to, we're more than happy to brief the Ott issue. Now, we have these killer law clerks. They'll do it. Okay. Well, I'd love the opportunity to be heard on it, because it was not raised in any of the opinions. The other thing, of course, is that he addressed the issue of the fact that the insurance code definition of agent is binding as a matter of law, and that's not accurate. As we pointed out in our reply brief, there is a common law definition of agency. And if you look even at the defendant's brief, they acknowledge that. And they say at page 44 to 45 that the fact and scope of an agency is determined by the actions of the parties. And in fact, they argue that the only important thing was whether or not we had an agency for purpose of procuring the insurance, but the agency can be created for numerous other types of purposes, which could be specific or general. There clearly is no binding authority on the formal definition of agent as it exists in the insurance code. The final issue, of course, is I did want to address also the fact that we believe that there was a ---- You're running out of time, counsel. Okay. I did want to address ---- Very briefly. In 15 seconds, Your Honor. Very well. Thank you. An issue is the issue of waiver, and that exists subsequent to the Pegas and Barrera thing. We say that they're post notice conduct in terms of waiting and in terms of doing things consistent with the continuation of the policy would raise a separate issue of fact regarding whether or not they had intentionally relinquished a known right to rescind the policy. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Trott, Paez